WILLIAM CASSIDY, Respondent, v. JAMES METCALF *et al.*, Appellants.

### April 10, 1876.

1. By an agreement, in writing, C. sold to M. his one-fourth interest in the firm of J., C. & Co. Afterwards M. sought to recover at law, on the contract, the interest so purchased; whereupon C. filed a bill in equity to restrain M. from prosecuting his action, and asking that the contract be so reformed as to show that M. purchased a one-fourth interest in the *good-will* of J., C. & Co. *Held*, 1. That a one-fourth interest in the good-will of a commission business is not the subject of sale. 2. The good-will of a business is indivisible, and when one of four partners retires from a firm, the good-will, in its entirety, remains with the old partners. 3. A court of equity will not execute a contract for the sale of a good-will, nor will it enjoin proceedings at law under such an agreement.

2. Equity will not reform a contract on account of a mistake of law.

3. Where a party seeks to reform a contract so as to make him sell his good-will in a firm, he will not be heard if his conduct shows either that he did not intend to sell his good-will, or, having sold it, that he fraudulently or wrongfully seeks to deprive the purchaser of it. He who seeks the interference of a court of equity must not come tainted with inequity.

APPEAL from St. Louis Circuit Court.

*Decree reversed and bill dismissed.*

*Thomas A. Russell* and *A. J. Smith*, for appellants, cited : Smith *v.* Powell, 14 Law Rep. 90 ; Reny *v.* Martin, 4 Johns. 597 ; Durant *v.* Bocant, Beas. 201 ; Burt *v.* Powell, 28 Cal. 632 ; Hoover *v.* Reilly, 2 Abb. (U. S.) 471 ; Nelson *et al. v.* Davis, 40 Ind. 366 ; 44 Ind. 395 ; 46 Ind. 427 ; 49 Ind. 434 ; Wood *v.* Price, 46 Ill. 439 ; 9 Ala. 662 ; 15 Ala. 149 ; 25 Ala. 694 ; 27 Ala. 296 ; 29 Ala. 233 ; 14 Ill. 286 ; 18 Ill. 492 ; 53 Ill. 456 ; Sims *v.* Lyle, 4 Wash. 320 ; Wintermute *v.* Snyder, 2 Green (N. J.) Ch. 490 ; Broadwell *v.* Dame, 6 Ill. 600 ; Adams' Eq. 189, 191 ; 1 Story Eq. Jur., secs. 113, 121, 127, 151 ; Lyons *v.* Richmond, 2 Johns. Ch. 51, 60 ; Vin. Abr. tit. ch. N, Com. Dig. 3 F. 8 ; Hunt *v.* Rousmaniers, 1 Pet. 1 ; Murray *v.* Shotwell, 1 Johns. Ch. 512 ; Stores *v.* Baker, 1 Johns. Ch. 166 ; Arthur *v.* Arthur, 10 Barb. 9 ; Hall *v.* Reed, 2 Barb. 500 ; Gilbert *v.* Gilbert,

38

9 Barb.; McElderry v. Shipley, 2 Mo. 25; Leavitt v. Palmer, 3 N. Y. 19; Stoddard v. Hart, 23 N. Y. 556; Gamer v. Bird, 57 Barb. 277; Thompson Scale Mfg. Co. v. Osgood, 26 Conn. 16; Morris v. Labarra, 58 Me. 26; Champlin v. Laytin, 18 Wend. 407; Harney v. Charles, 45 Mo. 157; Bingham v. Bingham, 1 Ves. 126; Lansdowne v. Lansdowne, Mos. 364; McAninch v. Longhlin, 13 Penn. 371; Wysche v. Green, 11 Geo. (Miss.) 159; Smith v. Jordan, 13 Minn. 271; Lyman v. United Ins. Co., 17 Johns. 372; Wemple v. Stewart, 22 Barb. 154; Glass v. Hurlburt, 102 Mass. 24; Stone v. Godfrey, 18 Jur. 162; Phibbs v. Cooper, Law Rep. H. L. 149; McCurdy v. Brithill, 5 Mon. 232; Lawrence v. Baubien, 2 Bailey (S. C.), 623; Daniel v. Mitchell, 1 Story, 172; Towns v. Smith, 1 Woodb. & M. 115; Carpenter v. Providence Ins. Co., 5 How. 185; Higbie v. Hopkins, 1 Wash. 230; Union Bank, of Georgetown, v. Geary, 5 Pet. 69; Hughes v. Blake, 1 Mas. 514; 3 Gill. & J. (Md.) 425; 1 Paige (N. C.) Ch. 239; 2 Gill. & J. (Md.) 208; 3 Wend. 532; 2 Johns. Ch. 92; 9 Cranch, 153; 3 Bland (Md.), 567; Winch v. Winchester, 1 V. & B. 378; Rich v. Jackson, 4 Bro. C. C. 515; Maybank v. Brook, 1 Bro. C. C. 84; Irnham v. Child, 1 Bro. C. C. 92; Lord Portmore v. Morris, 2 Bro. C. C. 219; Hare v. Sherwood, 3 Bro. C. C. 168; Jordon v. Sawkins, 3 Bro. C. C. 388; Costlake v. Till, 1 Russ. 376; Baxter v. Connelly, 1 J. & W. 580; Bozen v. Farlow, 1 Meriv. 459; Pars. on Part. 262, and note v; Shackle v. Baker, 14 Ves. 468; Story on Part. 170.

Ellis & Sullivan and Hitchcock, Lubke & Player, for respondent, cited: 1 Story Eq. Jur., secs. 152, 153, 156, 159; Story Eq. Jur., secs. 115, 116, 164, b, sec. 138, e; Bispham's Eq., sec. 190, note 4; Leitensdorfer v. Delphy, 15 Mo. 161; Tesson v. Atlantic Ins. Co., 40 Mo. 33; Hook v. Craighead, 32 Mo. 405; Hunt v. Ronsmaniere's Admr., 1 Pet. 13; Smith v. Jordan, 13 Minn. 271; Lyman v. United Ins. Co., 17 Johns. 372; Gillespie v. Moon, 2 Johns. Ch.

595; Wemple v. Stewart, 22 Barb. 158; Keith v. Globe Ins. Co., 52 Ill. 518; Sewing Machine Co. v. Langworthy, 18 Wis. 444; McCurdy v. Breathitt, 5 Mon. 234; Courtney v. Falley, 1 Heisk. (Tenn.) 715; Henkle v. Royal Assurance Co., 1 Ves. 317; Townsend v. Stangroom, 6 Ves. 331; Shelbourne v. Inchequin, 1 Bro. C. C. 340; Coles v. Paige, 10 Paige (N. Y.) Ch. 534; Lawrence v. Barbein, 2 Bailey (S. C.), 651; Bradford v. Union Bank, 13 How. 66; Sugden on Vend. (7th ed.) 146, 159; Andrews v. Essex Fire & Marine Ins. Co., 6 Mas. 6; Adams' Eq. 171; Keisselbrock v. Livingston, 4 Johns. Ch. 144; Woodbury Savings Bank v. Charter Oak Ins. Co., 31 Conn. 517; Longhurst v. Star Ins. Co., 19 Iowa, 364; Jordan v. Stevens, 51 Me. 78; Freeman v. Curtis, 51 Me. 140; Botsford v. McLean, 45 Barb. 478; Burdet v. Simms, 3 J. J. Mar. (Ky.) 190; Young v. Coleman, 43 Mo. 179; Delaware Ins. Co. v. Hogan, 2 Wash. 4; Ledyard v. Hartford Ins. Co., 24 Wis. 496; White v. Williams, 48 Barb. 222; Wilson v. Strayhorn, 26 Ark. 28; Adams v. Stevens, 49 Me. 362; Brown v. Lamphear, 35 Vt. 252; 1 Story Eq. Jur., sec. 138, k; Farrar v. Patton, 20 Mo. 84; Dickerson v. Chrisman, 28 Mo. 140; Townsend v. Hawkins, 45 Mo. 289; 1 Story Eq. Jur., sec. 1522, a; Strong v. Stewart, 4 Johns. Ch. 167; Babcock v. Wyman, 19 How. 299; Wilson v. Drumrite, 21 Mo. 329; Tibeau v. Tibeau, 22 Mo. 81.

BAKEWELL, J., delivered the opinion of the court.

This is a bill in equity to reform a written contract on the ground of mistake; also, asking an injunction to restrain appellants from prosecuting their action at law, instituted to recover $12,000 damages for the alleged breach of said contract. A temporary injunction went, restraining the action at law. Defendants moved the court to dissolve the injunction and dismiss plaintiff's bill, and this motion was heard on the issues made by the pleadings. Both petition and answer are verified by affidavit. In their joint answer defendants deny every material allegation of the bill, and

aver that the contract fully sets forth the intention of the parties.

On trial the court made a decree reforming the contract, as prayed, and making the injunction perpetual. A motion for a new trial having been overruled, and all exceptions being duly saved, the cause is brought to this court by appeal.

It is insisted by appellant that the Circuit Court erred in admitting testimony touching conversations and negotiations prior to the execution of the written instrument, and that the decree is unwarranted in law and unsupported by the evidence.

The contract to be reformed is as follows:

*"St. Louis, August 7, 1873.*

"Article of agreement entered into this day by and between W. L. Cassidy, of the firm of Irons, Cassidy & Co., St. Louis, Mo., party of the first part, and W. F. Moore and James Metcalf, of Brunswick, Chariton county, Mo., party of the second part. The party of the first part agrees to sell to the party of the second part his interest (one-fourth) in the firm of Irons, Cassidy & Co., a livestock firm doing business in the city of St. Louis, State of Missouri; the party of the second part agreeing to pay the party of the first part three thousand dollars cash, and the remainder in a negotiable note, or young stock that they have on their farms near Brunswick, Mo.; possession to be given on 1st day of September, 1873; the party of the first part to receive for the one-fourth interest five thousand dollars, to be paid as above described. Given under our hands this day.

[Signed,]                "W. L. CASSIDY.
                           "METCALF & MOORE."

The allegation of plaintiff's bill is that the contract ought to read, "one-fourth interest in the *good-will of the* firm of Irons, Cassidy & Co.," the words, "good will of the," having been left out by mutual mistake.

It appears from the evidence that, at the date of this agreement, respondent was one of the four members of the firm of Irons, Cassidy & Co., doing a very large live-stock commission business in Missouri, Kansas, and Nebraska. The net profits of the business for 1872 were about $40,000, the expenses about $8,000, and this business was done upon a joint capital of from $20,000 to $25,000. The actual assets of the firm at the time of the agreement were, however, worth something like $35,000, consisting partly of cash, and partly of accounts and bills receivable. Cassidy did not exactly know how much these accounts and bills were worth, but kept the general run of the matters—nearly enough to judge that his one-fourth interest in them was worth somewhere between $8,000 and $12,000. He wished to retire from the business because of a slight difficulty with his old partners, and, also, as he said, on account of his health, though it does not appear that there was anything the matter with him. He had tried to sell out, unsuccessfully, the person with whom he was in negotiation not acceding to his terms. He then wrote to Moore, of Metcalf & Moore, farmers and stock dealers near Brunswick, Chariton county, Missouri, proposing to sell out to them. Moore, after consulting Metcalf, came down at once, with some stock they had for sale, and entered into negotiations with Cassidy. Cassidy showed him the books, or a portion of the books, showing the profits for the preceding year, which Moore understood only from Cassidy's explanation, not being a book-keeper; and Moore and Metcalf, after seeing the three other members of the old firm, and ascertaining that they were willing to accept them in Cassidy's place, agreed to step into Cassidy's shoes, in the old firm, for $5,000 to be paid to Cassidy, $3,000 cash, and the balance in young stock, or notes. Metcalf & Moore accordingly sold out their stock on their farms in Chariton county, and removed to St. Louis with their families, and entered into

the new firm, which retained the old name, a brother of respondent, Abner C. Cassidy, being a member of both. firms.

Within a day or two after the creation of the new firm, respondent took the books of the old firm out of the old office, and proceeded, in another office in the immediate neighborhood, to pay off and collect debts and credits, and generally to settle up the old business. To this appellants. made no objection, and showed, indeed, pretty clearly, by their whole action at the time, that they had no idea that. they had any interest whatever in the assets of the old firm.

When Cassidy was selling out to Moore and Metcalf, he told them that he was going to abandon business in this locality, and proposed to move to Buffalo, Pittsburgh, or some distant point.

About a month after the sale, Moore and Metcalf paid $500 to Cassidy on account of a balance of $2,000 still due by them to him on account of the $5,000 they were to pay him. He had declined to take any of their stock in part. payment, as it did not suit him. They also, at this time, made some effort to raise money by a note, to pay him in. full.

On Christmas day the business of the old firm was wound up, and a complete settlement had between the old part- ners. The uncollected assets being divided, Cassidy received. altogether, as his share of the assets of the old firm, between September 1st and Christmas, about $8,000. To all this, Moore and Metcalf, though they knew, or might readily have known, of it, made no objection.

But Cassidy, about January 1st, resumed his old business. of live-stock commission merchant, within a few feet of his. old business stand, the then business stand of the new firm. At this Moore and Metcalf were highly indignant, and remon- strated angrily with Cassidy at this, which they character- ized as a breach of good faith. He replied that he had

not agreed not to go into business in the same neighborhood, and considered that he had, under the terms of the contract, a perfect moral and legal right to do so.

Moore and Metcalf then consulted counsel, and seem then first to have conceived the idea that, by the terms of their contract with Cassidy, they had purchased his one-fourth interest in the assets of the old firm.  On January 27th they instituted suit on the contract, and laid their damages at $12,000 for breach.  The present proceeding to enjoin and reform was then commenced by Cassidy.

Meanwhile, the new firm did not get on harmoniously. The member who had taken charge of the books refused any longer to do so, whereupon one of the original partners declared he would withdraw, and, to avoid a lawsuit, and because they could not help themselves, having no agreement as to any fixed period for the new association, Moore and Metcalf, on February 9, 1874, 153 days after the formation of the new partnership, agreed to a dissolution by mutual consent, and, on final settlement, received $3,599 as their one-fourth interest in the net profits of the business during that time.

There was evidence tending to show that, shortly after the sale to Moore and Metcalf, Cassidy boasted to one Green, a stock dealer and farmer, neighbor of Moore and Metcalf, that he had concealed important facts in regard to the business, at the time of the sale—showing them the profits, but not letting them see large items of expenditure ; and that he laughed at them as men ignorant of business, whom he had beguiled into paying $5,000 for what no one else would have paid $2,500.  The evidence of Green in this respect is contradicted by Cassidy.

There is also testimony that Moore said, when he bought, that he was paying a high price for an air title ; but this is contradicted by Moore.

The evidence is extremely voluminous.  We have

endeavored to give a fair statement of what appear, from this mass of matter, to be the substantial facts of the case.

It seems tolerably clear that Moore and Metcalf supposed that they were buying Cassidy's interest in the firm of Irons, Cassidy & Co., and that Cassidy thought that he was selling that interest. Both parties, however, believed that the sale of the interest of a retiring partner in a commission house did not pass his share in moneys already earned by the firm, debts due the firm, or moneys of the firm in bank, used by them for making advances to customers. The contract was drawn by Cassidy, who seems to be a clear-headed business man, having a good, plain English education and great experience in men and affairs. He says that he intended to use the word "influence," instead of "interest," in the contract; but that, at the moment of committing it to paper, the word would not come, and he popped down "interest" instead.

To counsel for respondent it appears clear that the statement in the last paragraph sought to settle this controvery in favor of respondent; that, on this theory of the evidence, here was a clear mistake—a mistake, not of law, but of fact—but, in any event, an undoubted mistake, against which equity must relieve by reforming the contract according to the admitted intention of the parties.

But several questions here arise : First. Was not this a mistake of law? If it was a mistake of law, the weight of authority is altogether that equity will not interfere. Second. Grant that this was a mistake of fact, and a case in which a court of chancery can grant relief, can the relief asked for in this case be granted under its peculiar circumstances?

Respondent asks us to reform the contract so as to make him sell his interest *in the good-will* of the firm of Irons, Cassidy & Co. Can he be heard, if his whole conduct from the date of the sale is such as to show, clearly, either that he

did not consider that he had sold an interest in that good-will, or, having sold it, that he fraudulently and wrongfully sought to deprive the purchaser of the very thing he now professes to have sold.

What is the good-will of a business?

The best definition that has ever been given to it is that of Lord Eldon, that it is nothing else than the probability that the old customers will resort to the old place. *Crutwell* v. *Lye*, 17 Ves. 335. In this sense only is the good-will recognized by law as a pecuniary interest. Hence, the sale of a trade with the good-will leaves the vendor at liberty to set up the same trade in any other situation. Pars. on Part. 262, and cases. Now, on respondent's own theory, he sold a very unsubstantial and airy thing. His former copartners were under no obligations whatever to carry on the old business in the old place, and, in about four months, refused to do so. Meanwhile, respondent himself at once set to work to destroy any little value in this intangible good-will by setting up the same business next door, after leading appellants to buy by the statement that he was going to move to another city, or go out of the business altogether. His one-fourth interest in the good-will is what respondent says appellants bought. If so, it was an unconscionable act on his part to attempt to destroy whatever value there might be in that by starting the same business, in his own name, on the very spot resorted to by the customers of the old firm. Plaintiff has violated the very bargain he wants us to allow him to assert that he made. He does not come to us with clean hands in this matter; he has not done equity, and, therefore, he now seeks it in vain.

Besides, the one-fourth interest in the good-will of a commission business is a thing that cannot, probably, be sold. If it be nothing more than the probability that the old customers will resort to the old place, it was a thing indivisible in itself. One-fourth of it could not, in the nature of things, be sold. The good-will in its entirety went to the

old partners when Cassidy retired ; and, if Moore and Metcalf acquired anything, they acquired it, on respondent's theory of the contract, not from him, but from the old partners. We may well adopt the language of Lord Eldon here : " The court will certainly not execute a contract for the sale of a good-will ; at the same time it will not enjoin against any proceedings at law under such an agreement. It cannot be conveyed ; go and make what you can of it at law ; if you can recover, very well ; we won't prevent you ; if you cannot, very well ; we won't assist you." *Baxter* v. *Connolly*, 1 J. & W. 556. We will not so reform this contract as to make it a contract to sell nothing, or to sell a pretended right, which respondent, after it was sold, considered himself not bound to respect.

As these considerations dispose of the case, it is not necessary to go into the many other interesting questions which it presents, and which have been very ably and ingeniously handled by the counsel on either side, both in their valuable printed briefs and in the very interesting oral argument of the case.

It follows that the judgment of the Circuit Court should be reversed ; and, in order that no possible question may arise as to the complete right of the respondent here to appeal, we will not remand the cause, but give final judgment here.

The decree of the Circuit Court is in all respects reversed and the bill is dismissed. The other judges concur.